**LeClairRyan**
*A Professional Corporation*
One Riverfront Plaza
1037 Raymond Boulevard, 16th Floor
Newark, New Jersey 07102
(973) 491-3600
Attorneys for Plaintiff, Baymont Franchise Systems, Inc.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| BAYMONT FRANCHISE SYSTEMS, INC., a Delaware Corporation, | : | Civil Action No. 16- |
| Plaintiff, | : | **COMPLAINT** |
| v. | : | |
| UNIVERSAL LODGING, INC., an Arkansas Corporation; JAYENDRA D. PATEL, an individual; HARISH PATEL, an individual; DAVID PATEL, an individual; and INDIRA PATEL, an individual, | : | |
| Defendants. | : | |

Plaintiff Baymont Franchise Systems, Inc., by its attorneys, LeClairRyan, complaining of defendants Universal Lodging, Inc., Jayendra D. Patel, Harish Patel, David Patel and Indira Patel, says:

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff Baymont Franchise Systems, Inc. ("BFS") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

12279688_1
BFS # 33870

2.        Defendant Universal Lodging, Inc. ("Universal"), on information and belief, is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business at 5300 North State Line Avenue, Texarkana, Arkansas 71854.

3.        Defendant Jayendra D. Patel ("J. Patel"), on information and belief, is a principal of Universal and a citizen of the State of Texas, residing at 6102 Pleasant Lane, Texarkana, Texas 75503.

4.        Defendant Harish Patel ("H. Patel"), on information and belief, is a principal of Universal and a citizen of the State of Oklahoma, residing at 400 SE Lincoln Boulevard, Idabel, Oklahoma 74745.

5.        Defendant David Patel ("D. Patel"), on information and belief, is a principal of Universal and a citizen of the State of Texas, residing at 1130 I-30, Rockwell, Texas 75087.

6.        Defendant Indira Patel ("I. Patel"), on information and belief, is a principal of Universal and a citizen of the State of Texas, residing at 801 Hebron Parkway, Lewisville, Texas 75057.

7.        This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 inasmuch as the plaintiff and all the defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

8.        This Court has personal jurisdiction over Universal by virtue of, among other things, section 17.6.3 of the June 30, 2009 franchise agreement by and between Universal and BFS (the "Franchise Agreement"), described in more detail below, pursuant to which Universal has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

9.    This Court has personal jurisdiction over J. Patel, H. Patel, D. Patel and I. Patel by virtue of, among other things, the terms of a guaranty (the "Guaranty"), described in more detail below, pursuant to which J. Patel, H. Patel, D. Patel and I. Patel acknowledged that they were personally bound by section 17 of the Franchise Agreement.

10.    Venue is proper in this District pursuant to section 17.6.3 of the Franchise Agreement, inasmuch as that provision contains an express waiver by Universal of any objection to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Agreements Between The Parties

11.    On or about June 30, 2009, BFS entered into the Franchise Agreement with Universal for the operation of a 59-room Baymont® guest lodging facility located at 5300 North State Line Avenue, Texarkana, Arkansas 71854, Site No. 33870-84723-01 (the "Facility"). A true copy of the Franchise Agreement is attached hereto as Exhibit A.

12.    Pursuant to section 5 of the Franchise Agreement, Universal was obligated to operate a Baymont® guest lodging facility for a twenty-year term.

13.    Pursuant to section 7, section 18.5 and Schedule C of the Franchise Agreement, Universal was required to make certain periodic payments to BFS for royalties, system assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees").

14.    Pursuant to section 7.3 of the Franchise Agreement, Universal agreed that interest is payable "on any past due amount payable to [BFS] under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

15.     Pursuant to section 3.6 of the Franchise Agreement, Universal was required to prepare and submit monthly reports to BFS disclosing, among other things, the amount of gross room revenue earned by Universal at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to BFS.

16.     Pursuant to section 3.6 of the Franchise Agreement, Universal agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.6 and 4.8 of the Franchise Agreement, Universal agreed to allow BFS to examine, audit, and make copies of the entries in these books, records, and accounts.

17.     Pursuant to section 11.2 of the Franchise Agreement, BFS could terminate the Franchise Agreement, with notice to Universal, for various reasons, including Universal's (a) failure to pay any amount due BFS under the Franchise Agreement, (b) failure to remedy any other default of its obligations or warranties under the Franchise Agreement within 30 days after receipt of written notice from BFS specifying one or more defaults under the Franchise Agreement, and/or (c) receipt of two or more notices of default under the Franchise Agreement in any one year period, whether or not the defaults were cured.

18.     Pursuant to sections 12.1 and 18.6 of the Franchise Agreement, Universal agreed that, in the event of a termination of the Franchise Agreement pursuant to section 11.2, it would pay liquidated damages to BFS in accordance with a formula specified in the Franchise Agreement.

19.     Pursuant to section 17.4 of the Franchise Agreement, Universal agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees,

incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement."

20.     Effective as of the date of the Franchise Agreement, J. Patel, H. Patel, D. Patel and I. Patel provided BFS with a Guaranty of Universal's obligations under the Franchise Agreement.  A true copy of the Guaranty is attached hereto as Exhibit B.

21.     Pursuant to the terms of the Guaranty, J. Patel, H. Patel, D. Patel and I. Patel agreed, among other things, that upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause [Universal] to perform, each unpaid or unperformed obligation of [Universal] under the [Franchise] Agreement."

22.     Pursuant to the terms of the Guaranty, J. Patel, H. Patel, D. Patel and I. Patel agreed to pay the costs, including reasonable attorneys' fees, incurred by BFS in enforcing its rights or remedies under the Guaranty or the Franchise Agreement.

## The Defendants' Defaults and Termination

23.      By letter dated August 8, 2014, a true copy of which is attached hereto as Exhibit C, BFS advised Universal that (a) it was in breach of the Franchise Agreement because it owed BFS approximately $32,461.83 in outstanding Recurring Fees, (b) it had 30 days within which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

24.     By letter dated October 21, 2014, a true copy of which is attached hereto as Exhibit D, BFS advised Universal that (a) it was in breach of the Franchise Agreement because it owed BFS approximately $41,683.08 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

25.     By letter dated January 29, 2015, a true copy of which is attached hereto as Exhibit E, BFS advised Universal that (a) it was in breach of the Franchise Agreement because it owed BFS approximately $51,474.17 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

26.     By letter dated April 9, 2015, a true copy of which is attached hereto as Exhibit F, BFS advised Universal that (a) it was in breach of the Franchise Agreement because it owed BFS approximately $59,021.50 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

27.     By letter dated June 30, 2015, a true copy of which is attached as Exhibit G, BFS terminated the Franchise Agreement, effective June 30, 2015, and advised Universal that it was required to pay to BFS as liquidated damages for premature termination the sum of $59,00.00 as required under the Franchise Agreement, and all outstanding Recurring Fees through the date of termination.

## FIRST COUNT

28.     BFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 27 of the Complaint.

29.     Pursuant to sections 3.6 and 4.8 of the Franchise Agreement, Universal agreed to allow BFS to examine, audit, and make copies of Universal's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

30.     The calculation of the monetary amounts sought by BFS in this action is based on the gross room revenue information supplied to BFS by Universal and, to the extent there has been non-reporting, BFS's estimate as to the gross room revenue earned by Universal.

31.     The accuracy of this estimate cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Universal.

**WHEREFORE**, BFS demands judgment ordering that Universal account to BFS for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility from the inception through the date of termination of the Franchise Agreement.

## SECOND COUNT

32.     BFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 31 of the Complaint.

33.     By letter dated June 30, 2015, BFS terminated the Franchise Agreement, effective June 30, 2150, due to Universal's failure to cure its monetary defaults under the Franchise Agreement.

34.     Sections 12.1 and 18.6 of the Franchise Agreement provide that, in the event of termination of the Franchise Agreement due to action of the Franchisee, Universal shall pay liquidated damages to BFS within 30 days of termination.

35.     As a result of the termination of the Franchise Agreement, Universal is obligated to pay BFS liquidated damages in the amount of $59,000.00, as calculated pursuant to sections 12.1 and 18.6 of the Franchise Agreement.

36.     Notwithstanding BFS's demand for payment, Universal has failed to pay BFS the liquidated damages as required in sections 12.1 and 18.6 of the Franchise Agreement.

37.     BFS has been damaged by Universal's failure to pay liquidated damages.

**WHEREFORE**, BFS demands judgment against Universal for liquidated damages in the amount of $59,000.00, together with interest, attorneys' fees, and costs of suit.

## THIRD COUNT

38.     BFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 37 of the Complaint.

39.     By virtue of the premature termination of the Franchise Agreement, BFS sustained a loss of future revenue over the remainder of the twenty-year term of the Franchise Agreement.

40.     If the Court determines that Universal is not liable to pay BFS liquidated damages as required by sections 12.1 and 18.6 of the Franchise Agreement then, in the alternative, Universal is liable to BFS for actual damages for the premature termination of the Franchise Agreement.

41.     BFS has been damaged by Universal's breach of its obligation to operate a Baymont® guest lodging facility for the remaining term of the Franchise Agreement.

**WHEREFORE**, BFS demands judgment against Universal for actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit.

## FOURTH COUNT

42.     BFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 41 of the Complaint.

43.     Pursuant to section 7, section 18.5, and Schedule C of the Franchise Agreement, Universal was obligated to remit Recurring Fees to BFS.

8

44.    Despite its obligation to do so, Universal failed to remit certain of the Recurring Fees due and owing under the Franchise Agreement in the current amount of $76,963.42.

45.    Universal's failure to remit the agreed Recurring Fees constitutes a breach of the Franchise Agreement and has damaged BFS.

**WHEREFORE**, BFS demands judgment against Universal for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $76,963.42, together with interest, attorneys' fees, and costs of suit.

## FIFTH COUNT

46.    BFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 45 of the Complaint.

47.    At the time of the termination of the Franchise Agreement, Universal was obligated to pay BFS Recurring Fees.

48.    Despite its obligation to do so, Universal failed to pay certain of the Recurring Fees due and owing under the Franchise Agreement in the current amount of $76,963.42.

49.    Universal's failure to compensate BFS constitutes unjust enrichment and has damaged BFS.

**WHEREFORE**, BFS demands judgment against Universal for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $76,963.42, together with interest, attorneys' fees, and costs of suit.

## SIXTH COUNT

50.    BFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 49 of the Complaint.

51.     Pursuant to the terms of the Guaranty, J. Patel, H. Patel, D. Patel and I. Patel agreed, among other things, that upon a default under the Franchise Agreement, they would immediately make each payment and perform each obligation required of Universal under the Franchise Agreement.

52.     Despite their obligation to do so, J. Patel, H. Patel, D. Patel and I. Patel have failed to make any payments or perform or cause Universal to perform each obligation required under the Franchise Agreement.

53.     Pursuant to the Guaranty, J. Patel, H. Patel, D. Patel and I. Patel are liable to BFS for Universal's liquidated damages in the amount of $59,000.00, or actual damages in an amount to be determined at trial, and Universal's Recurring Fees due and owing under the Franchise Agreement, in the current amount of $76,963.42.

**WHEREFORE**, BFS demands judgment against J. Patel, H. Patel, D. Patel and I. Patel for damages in the amount of all liquidated damages, or actual damages, and Recurring Fees due and owing under the Franchise Agreement, together with interest, attorneys' fees, and costs of suit.

**LeClairRyan**
Attorneys for Plaintiff,
Baymont Franchise Systems, Inc.

By: _____
         Bryan P. Couch

Dated: 2/22/16

10

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other

action pending in any court or of any pending arbitration or administrative proceeding.

**LeClairRyan**
Attorneys for Plaintiff,
Baymont Franchise Systems, Inc.

By: _____

Bryan P. Couch

Dated 2/22/16

11